## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 13 B 16661 |
| | ) | Chapter 7 |
| ROBERT SOBCZAK- | ) | Judge Donald R. Cassling |
| SLOMCZEWSKI, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WDH LLC, | ) | |
| | ) | Adversary No. 13 A 00972 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT SOBCZAK- | ) | |
| SLOMCZEWSKI, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

WDH LLC (the "Plaintiff") argues on its Motion for Summary Judgment that facts previously established before two separate federal courts prove that the defendant/debtor, Robert Sobczak-Slomczewski (the "Debtor"), committed larceny and embezzlement within the meaning of 11 U.S.C. § 523(a)(4) and caused willful and malicious injury under 11 U.S.C. § 523(a)(6). Therefore, according to the Plaintiff, the $677,000 debt owed to it by the Debtor should be found non-dischargeable as a matter of law. The Court agrees.

### Synopsis of Proceedings

The Debtor borrowed money from the Plaintiff's predecessor to purchase a hotel in the Wisconsin Dells. After the Debtor defaulted on the loan, the original lender commenced foreclosure proceedings in the Wisconsin state court (the "Wisconsin Foreclosure Court"). The

receiver appointed by the Wisconsin Foreclosure Court to run the hotel removed the Debtor as a signatory on the hotel's bank account.

Beginning some months prior to the appointment of the receiver and continuing after the Debtor's removal as a signatory on the hotel's bank account, the Debtor caused the manager of the hotel to transfer large sums of money from the hotel's account to a separate corporate entity owned and controlled by the Debtor. Those transfers, all of which occurred while the Debtor was in default, eventually totaled over $677,000 and were made from hotel revenues that had been pledged as cash collateral to secure repayment of the loan.

The Wisconsin Foreclosure Court ordered that the hotel be sold. However, just before that sale was to take place, and without the consent of either the Wisconsin Foreclosure Court or the receiver, the Debtor merged the entity that owned the hotel, Dell Hospitality, Inc., into a new entity he created and controlled, Dell5 Hospitality, Inc. Immediately following this merger, the Debtor caused this new entity to file a Chapter 11 bankruptcy case.

The Dell5 Hospitality bankruptcy case was assigned to Bankruptcy Judge Jacqueline P. Cox. A motion to lift the automatic stay was filed before and granted by Judge Cox. In her ruling, Judge Cox specifically found that the Debtor had filed the bankruptcy case for Dell5 Hospitality with the intent to hinder and delay the lender in its efforts to foreclose on its mortgage on the hotel.

After Judge Cox lifted the stay, the Wisconsin foreclosure action resumed, and the hotel was sold. After discovering the Debtor's misappropriation of its cash collateral, the lender amended its complaint in the Wisconsin Foreclosure Court action to add claims for theft and conversion under Wis. Stat. § 943.20(1). The Debtor removed those new claims to the United States District Court for the Western District of Wisconsin.

2

The Wisconsin District Court ruled against the Debtor, finding that the Debtor had converted at least $677,000 from the Plaintiff. In making his findings, the District Court judge relied in part on the factual findings made by Judge Cox in ruling on the motion to vacate the automatic stay. The Debtor then personally filed a bankruptcy petition.

The Plaintiff, current holder of the loan documents, filed this adversary proceeding against the Debtor seeking to have the $677,000 debt owed to it found non-dischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). The Plaintiff argues that it is entitled to summary judgment because all of the facts necessary to prove non-dischargeability of the debt have already been litigated in and decided previously by the Wisconsin District Court (or by Judge Cox, whose findings were incorporated by reference into the Wisconsin District Court's opinion). The Debtor seeks to relitigate all of the issues previously decided by these courts. The Court agrees with the Plaintiff that summary judgment is appropriate because there are no disputed issues of material fact and the Debtor is collaterally estopped from relitigating the prior courts' findings as to the elements establishing that the debt is non-dischargeable under § 523(a)(4) and (a)(6).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). On a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of the record, whether there is any material dispute of fact

that requires trial." *Egan v. Freedom Bank*, 659 F.3d 639, 643 (7th Cir. 2011). The movant

bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff, if it is the movant, can meet this

burden by adducing evidence sufficient to make out a prima facie case on each element of its

claim. *See McKinney v. Am. River Transp. Co.*, 954 F. Supp.2d 799, 803 (S.D. Ill. 2013). If the

plaintiff accomplishes this, then the defendant must adduce evidence to show some genuine issue

of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).

Rule 56 describes not only the standard but the procedures for summary judgment

motions. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012). The bankruptcy

court's Local Rules also set out summary judgment procedures.

Under Local Rule 7056-1, the movant must submit a separate statement of material facts

consisting of short numbered paragraphs with references to evidentiary material supporting each

statement. L.R. 7056-1(A), (B). The Plaintiff has complied with this requirement.

The opposing party must then respond to each of the movant's statements of fact,

admitting or denying the statement, and including "in the case of disagreement," references to

evidentiary material. L.R. 7056-2(A)(2)(a). Failure to respond has serious consequences. In

particular, facts not denied, or not denied in a permissible way, are deemed admitted. L.R. 7056-

1(C), L.R. 7056-2(B); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Trial

judges are entitled to enforce this requirement strictly, given "the high volume of summary

judgment motions and the benefits of clear presentation of relevant evidence and law. . . ." *Stevo*

*v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011).

The Debtor did not respond properly to the Plaintiff's statement of facts submitted under

Local Rule 7056-1(A). He completely ignored the Local Rules' requirement that he file a

separate response admitting or denying each of the Plaintiff's factual statements with references

to supporting evidence. Instead, he submitted a "Response Brief" and a supporting Affidavit.

(Docket Nos. 56 & 57.)

The Court finds this Response Brief and Affidavit are not acceptable. It is not the

Court's job to compare the Response Brief and Affidavit with the Plaintiff's statement of facts,

determining which of the Plaintiff's facts might be disputed. *See Smith v. Lamz*, 321 F.3d 680,

683 (7th Cir. 2003) ("A district court is not required to wade through [an improper presentation]

in search of a genuinely disputed fact.") The point of the Local Rules is to clarify the summary

judgment presentation. The additional work required by a presentation like the Debtor's is

precisely what the Local Rules are designed to avoid. Because the Debtor did not properly

respond to the Plaintiff's Local Rule 7056-1(A) statement, all of the material facts in the

Plaintiff's statement are deemed admitted.[1]

### III. UNDISPUTED MATERIAL FACTS

The following facts are taken from the Plaintiff's statement of facts, the pleadings, and

the exhibits attached to the Plaintiff's motion.

The Plaintiff is a limited liability company organized under the laws of the State of

Delaware. (7056-1 Statement ¶ 1; Compl. ¶ 5.) The Debtor is a resident of the state of Illinois.

(7056-1 Statement ¶ 2; Ans. ¶ 7.)

---

[1] Nonetheless, the Court did review the Debtor's Response Brief to the Plaintiff's Motion for Summary Judgment as well as his Affidavit in Support of the Response Brief. For the reasons discussed below, the Court finds that neither document raises any genuine issues of material fact (as opposed to legal conclusions, with which the documents are replete) that would preclude the entry of summary judgment in favor of the Plaintiff.

The Debtor was the president and owner of Dells Hospitality, Inc., d/b/a Hilton Garden Inn Wisconsin Dells ("Dells Hospitality"). (7056-1 Statement ¶ 7; Aff. of Daniel J. McGarry[2] ¶¶ 5 & 6, Exs. C & D.) Dells Hospitality owned and operated the Hilton Garden Inn Hotel in Lake Delton, Wisconsin (the "Hotel"). Dells Hospitality purchased the Hotel with the proceeds of a $12,600,000 loan documented by the following:

- A promissory note (the "Note") to the original lender, Bear Stearns Commercial Mortgage, Inc. ("Bear"). (7056-1 Statement ¶ 9; McGarry Aff. ¶ 5, Ex. C.)

- A mortgage and security agreement (the "Security Instrument") creating a mortgage lien on the Hotel. (7056-1 Statement ¶ 10; McGarry Aff. ¶¶ 5 & 6, Exs. C & D.)

- An Assignment of Leases and Rents and certain other documents in favor of Bear. (7056-1 Statement ¶ 11; McGarry Aff. ¶¶ 5 & 6, Exs. C & D.)

- An indemnity agreement (the "Indemnity Agreement"), executed by the Debtor, guaranteeing payment of the Note and promising to indemnify Bear from the adverse consequences of certain defaults or defalcations by or on behalf of the Hotel. (7056-1 Statement ¶ 8; McGarry Aff. ¶¶ 5 & 6, Exs. C & D.)

Hereinafter, the Note, Security Instrument, Assignment of Leases and Rents, and Indemnity Agreement, all of which were executed on November 28, 2007, are collectively referred to as the "Loan Documents."

Bear subsequently sold the Loan Documents to Maiden Lane Commercial Mortgage-Backed Securities Trust 2008-1 ("Maiden Lane"), a grantor trust of which U.S. Bank National Association is Trustee, pursuant to, among other things, an Omnibus Assignment executed on or about June 29, 2009 (the "Initial Assignment"). (7056-1 Statement ¶ 12; McGarry Aff. ¶¶ 5 & 6, Exs. C & D.) Maiden Lane in turn reassigned the Loan Documents, including the Indemnity Agreement, to the Plaintiff pursuant to, among other things, an Omnibus Assignment dated October 1, 2010 (the "Subsequent Assignment"). (7056-1 Statement ¶ 13; McGarry Aff. ¶¶ 5 &

---

[2] Hereinafter, this Affidavit will be referred to as "McGarry Aff."

6, Exs. C & D.) The Plaintiff is the current assignee and holder of the Loan Documents. (7056-

1 Statement ¶ 14; McGarry Aff. ¶¶ 5 & 6, Exs. C & D.)

The Indemnity Agreement was executed by both Dells Hospitality and the Debtor and

contained both indemnification provisions and guaranty provisions. (7056-1 Statement ¶ 15;

McGarry Aff. ¶ 5, Ex. C.) Under the indemnification provisions, the Debtor promised to protect,

defend, indemnify, release, and hold the Plaintiff[3] harmless from and against any and all losses

arising out of several potential scenarios, including the following:

> (i) fraud or misrepresentation by [Dells Hospitality] in connection
> with the Security Instrument, the Note or the other Security
> Documents (as defined in the Security Instrument);
>
> . . .
>
> (iii) the removal or disposal of any portion of the Property (as
> defined in the Security Instrument)[4] after default under the Note,
> the Security Instrument or Other Security Documents;
>
> (iv) the misapplication or conversion by [Dells Hospitality] of ...
> (C) any Rents (as defined in the Security Instrument)[5] following
> default under the Security Instrument, the Note or the Other
> Security Documents;
>
> . . .
>
> (vi) the failure of [Dells Hospitality] to obtain Lender's prior
> written consent to any assignment, transfer, or conveyance of the
> Property or an interest therein as required by the Security
> Instrument;
>
> . . .
>
> (viii) [Dells Hospitality's] filing or consent to the filing of any
> petition, either voluntary or involuntary, to take advantage of any
> applicable insolvency, bankruptcy, liquidation or reorganization

---

[3] Even though the Loan Documents were originally executed by and between Bear, Dells Hospitality, and the Debtor, pursuant to the Initial Assignment and the Subsequent Assignment, the Plaintiff is the holder of the Loan Documents, including the Indemnity Agreement, and therefore is the "Lender" for purposes of this matter.

[4] "Property" is defined in the Security Instrument in part as "all right, title and interest of [Dells Hospitality], its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits. . . ." (McGarry Aff. ¶¶ 5 & 6, Exs. C & D.)

[5] "Rents" are described in the Security Instrument in part as "all revenues and credit card receipts collected from guest rooms . . . all receivables [and] customer obligations. . . ." (*Id.*)

> statute, or make an assignment for the benefit of creditors. As used herein, the term "Losses" includes any and all claims, suits, liabilities, actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).

(7056-1 Statement ¶16; McGarry Aff. ¶ 5, Ex. C.)

In addition, the Debtor also personally guaranteed repayment of the entire debt represented by the Loan Documents:

> Guaranty. (a) [The Debtor] absolutely and unconditionally guarantees to Lender the prompt and full payment of the Debt (as defined in the Security Instrument) in the event that [Dells Hospitality] files or consents to the filing against [Dells Hospitality] of a petition, voluntary or involuntary, under the U.S. Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or any partner, member or equivalent person of [Dells Hospitality], or any person acting in concert with [Dells Hospitality] or any of the foregoing persons, files or joins in the filing against [Dells Hospitality] of an involuntary petition under the U.S. Bankruptcy Code or any other federal or state bankruptcy or insolvency law.

(7056-1 Statement ¶ 17; McGarry Aff. ¶ 5, Ex. C.) In short, the Indemnity Agreement explicitly obligated the Debtor to "absolutely and unconditionally" guarantee prompt and full payment of the loan in the event Dells Hospitality filed or consented to the filing of a voluntary or involuntary bankruptcy petition. (7056-1 Statement ¶ 18; McGarry Aff. ¶ 5, Ex. C.)

## Dells Hospitality Defaults, Resulting in Foreclosure of the Hotel and Appointment of a Receiver

Dells Hospitality failed to make its January 1, 2009 monthly loan payment of approximately $107,000, thereby defaulting under the Loan Documents. (7056-1 Statement ¶¶ 19 & 20; McGarry Aff. ¶ 7, Ex. E at 136:3-7.) Written notice of default was provided, but Dells

Hospitality never cured the default or made any additional payments on the loan. (7056-1
Statement ¶ 21; McGarry Aff. ¶ 7, Ex. E at 135-36: 20-7.)

The holder of the loan at the time (Maiden Lane) filed an action against Dells Hospitality
in the Sauk County Circuit Court on August 5, 2009 (Case No. 09-CV-00736, the "Foreclosure
Action"), seeking to foreclose on Dells Hospitality's interest in the Property, as defined in the
Security Instrument. (7056-1 Statement ¶ 22; McGarry Aff. ¶ 8, Ex. F.) On August 7, 2009, the
court appointed Daniel T. Fay as receiver of the Property (the "Receiver") and denied Dells
Hospitality further access to revenues from the Property. (7056-1 Statement ¶ 23; McGarry Aff.
¶ 11, Ex. I.) The order appointing the Receiver specifically stated that the Receiver had power to
"preserve, operate, maintain and care for . . . any and all personal property, assets . . . accounts
. . . notes . . . and all other property of any kind and every kind, character and description . . .
wherever the same may be located or found . . . ." (7056-1 Statement ¶ 24; McGarry Aff. ¶ 11,
Ex. I.)

### The Receiver Removes the Debtor as a Signatory on Dells Hospitality's Bank Account

To further effectuate the Receiver's authority over the Property, the Debtor was removed
as a signatory on Dells Hospitality's bank account on August 10, 2009. (7056-1 Statement ¶ 25;
McGarry Aff. ¶ 11, Ex. I.) That account, located at M&I Bank, had been used to make the loan
payments until December 2008.[6] (7056-1 Statement ¶ 25; McGarry Aff. ¶ 11, Ex. I.) At the
time the Receiver was appointed, the only Dells Hospitality account the Receiver was aware of
was the M&I Account. (7056-1 Statement ¶ 32; McGarry Aff. ¶ 11, Ex. I.)

---

[6] The Hotel maintained its operating account at M&I Bank in Dells Hospitality's name (the "M&I Account").
(7056-1 Statement ¶ 28; McGarry Aff. ¶ 11, Ex. I.) The M&I Account was controlled primarily by Pyramid
Hospitality, Inc. ("Pyramid"), the management company that ran the Hotel's day-to-day operations, although the
Debtor was a signatory as well until the Receiver was appointed in August 2009. (7056-1 Statement ¶¶ 27 & 29;
McGarry Aff. ¶ 11, Ex. I.) The Hotel revenues were deposited in the M&I Account, from which the Hotel expenses
were paid. (7056-1 Statement ¶ 30; McGarry Aff. ¶ 11, Ex. I.) Among other expenses, Pyramid ensured that the
Hotel made its monthly loan payments on the Note from the M&I Account through December 2008. (7056-1
Statement ¶ 31; McGarry Aff. ¶ 11, Ex. I.)

However, in addition to the M&I Account, the Debtor had, at some time prior to October 2008, opened JPMorgan Chase Bank Account No. 729863621 (the "Chase Account") in the name of Dells Hospitality at a Chase branch near the Debtor's home. (7056-1 Statement ¶ 33; McGarry Aff. ¶ 10, Ex. H.)  Although nominally belonging to Dells Hospitality, this Chase Account was controlled solely by the Debtor. (7056-1 Statement ¶ 34; McGarry Aff. ¶ 11, Ex. I.)  As president of Dells Hospitality, the Debtor was served with the order appointing the Receiver. (7056-1 Statement ¶ 35; McGarry Aff. ¶ 11, Ex. I.) He failed to disclose the existence of the Chase Account to the Receiver.  (*Id.*)

### The Debtor Converts the Plaintiff's Property

Between January 27, 2009, and August 29, 2009, the Debtor caused Dells Hospitality to divert money ("Rents" and "Property" as defined in the Security Instrument) from the Hotel operating account to an out-of-state account controlled by the Debtor. (7056-1 Statement ¶ 26; McGarry Aff. ¶¶ 9 & 10, Exs. G & H.) From there, the Debtor transferred the funds yet again, to another company the Debtor owned and controlled, Grafin, Inc. ("Grafin"). (*Id.*) The diversion of Rents and Property is evidenced by bank account statements subpoenaed by the Plaintiff (the "Bank Statements"), as well as e-mail correspondence between the Debtor and representatives at Pyramid. (7056-1 Statement ¶ 27; McGarry Aff. ¶¶ 10 & 11, Exs. H & I.) These transfers occurred while Dells Hospitality was in default, without the Plaintiff's consent, and, in some instances, in direct disregard of the state-court order barring the Debtor's and Dells Hospitality's access to the account.

On January 27, 2009, shortly after Dells Hospitality's initial default under the Loan Documents, the Debtor e-mailed Chris Wilroy of Pyramid telling him, "Dear Chris, [p]er our conversation I requested a [sic] TODAY wire the funds needed for the mortgage payment to

Wells Fargo. The payment will be done from Dells Hospitality Chase [A]ccount and overnighted on Thursday to the vendor." (7056-1 Statement ¶ 36; McGarry Aff. ¶ 11, Ex. I.) The Debtor sent this e-mail not from his Dells Hospitality email account, but from his Grafin email address, robert@grafininc.com. (7056-1 Statement ¶ 37; McGarry Aff. ¶ 11, Ex. I.) As the Debtor instructed, Pyramid transferred $107,257.93 to the Chase Account on January 28, 2009.[7] (7056-1 Statement ¶ 38; McGarry Aff. ¶ 10, Ex. H.)

Contrary to making a payment to Wells Fargo as the Debtor had promised Mr. Wilroy, he instead made the following transfers:

- $50,000 to Grafin via check dated January 28, 2009. (7056-1 Statement ¶ 40; McGarry Aff. ¶ 10, Ex. H.)

- $57,700 to account number "MmaXxxxxx8919," a Chase savings account (the "8919 Account") on January 30, 2009. (7056-1 Statement ¶ 41; McGarry Aff. ¶ 10, Ex. H.)

- $22,251.14 from the 8919 Account into the Chase Account on February 6, 2009. (7056-1 Statement ¶ 42; McGarry Aff. ¶ 10, Ex. H.)

- $22,000 to Grafin by check dated February 6, 2009. (Id.)

- $35,500 from the 8919 Account to the Chase Account on March 2, 2009. (7056-1 Statement ¶ 43; McGarry Aff. ¶ 10, Ex. H.)

- $35,500 to Grafin by check dated March 2, 2009. (Id.)

- $50,000 from the M&I Account to the Chase Account on March 17, 2009. (7056-1 Statement ¶ 44; McGarry Aff. ¶ 10, Ex. H.)

- $80,000 from the M&I Account to the Chase Account on March 30, 2009. (Id.)

The Debtor drained the Chase Account after each deposit was made. (7056-1 Statement ¶ 45; McGarry Aff. ¶ 10, Ex. H.)

---

[7] The Bank Statements describe the deposit as "Dells Hospitalit JP Morgan Mortg Transfer CCD ID: B260358911." (7056-1 Statement ¶ 39; McGarry Aff. ¶ 10, Ex. H.)

The Debtor's misappropriation of the Hotel's cash (and the Plaintiff's collateral) did not

stop there. The Debtor continued to transfer funds from the Chase Account into Grafin's account

on a regular basis through August 2009, as shown in the following chart:

| MONTH | DEPOSITS | WITHDRAWALS |
|-------|----------|-------------|
| May | May 22, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $55,000 | May 22, 2009 – Check to Grafin Inc. for $55,000 |
| | May 28, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $45,000 | May 28, 2009 – Check to Grafin for $45,000 |
| June | June 9, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $30,000 | June 9, 2009 – Check to Grafin for $30,000 |
| July | July 1, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $150,000 | July 1, 2009 – Check to Grafin for $150,000 |
| | July 23, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $70,000 | July 23, 2009 – Check to Grafin for $69,900 |
| August | August 5, 2009 –"Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $90,000 | August 14, 2009 – Check to Grafin for $90,000 |
| | August 28, 2009 – "Fed Wire Credit Via: M&I Marshall & Ilsley/075000051 B/O: Dells Hospitality, Inc.": $136,000 | August 31, 2009 – Check to Grafin for $135,000 |

(7056-1 Statement ¶ 46; McGarry Aff. ¶ 10, Ex. H.)

All told, while Dells Hospitality was in default under the Loan Documents, the Debtor

caused Dells Hospitality to divert over $677,000.00 in Hotel revenue, constituting Rents and

Property under the Security Instrument, to the Chase Account and then to the Debtor's affiliate,

Grafin, without the Plaintiff's consent.  (7056-1 Statement ¶¶ 47 & 48; McGarry Aff. ¶ 10, Ex.

H.)

### The State Foreclosure Court Orders the Sale of the Hotel

On June 7, 2010, the Sauk County Circuit Court entered summary judgment in the

Foreclosure Action, paving the way for a sheriff's sale of the Hotel, pursuant to the Security

Instrument, to be conducted on or after two months from the date of entry of judgment. (7056-1

Statement ¶ 49; McGarry Aff. ¶ 12, Ex. J). In entering summary judgment, the court concluded

that the Debtor would not be permitted to contradict Dells Hospitality's sworn admission that it

had made, signed, and delivered the Note:

> Even if the Court were to consider the [Debtor's] Affidavit, the
> Court also concludes that Dells [Hospitality] is bound by the facts
> already admitted in its Answer. . . . In its Answer, Dells
> [Hospitality] unconditionally admitted that it had made, signed and
> delivered the Note. Under Wisconsin Case Law, Dells
> [Hospitality] cannot contradict its prior admissions through the
> submission of the [Debtor's] Affidavit.

(7056-1 Statement ¶ 49; McGarry Aff. ¶ 12, Ex. J at p. 7 ¶¶ 8 & 9.)

### The Debtor Thwarts the Court-Approved Sale Through an Unauthorized Merger

The sheriff's sale of the Hotel was scheduled for August 10, 2010, and notice of the sale

was published and posted. (7056-1 Statement ¶ 50; McGarry Aff. ¶ 13, Ex. K.) On August 6,

2010, without seeking or obtaining the Plaintiff's prior consent as required under the Loan

Documents, the Debtor thwarted the sheriff's sale by filing, in the offices of the Wisconsin

Department of Financial Institutions and the Illinois Secretary of State, articles of merger

between Dells Hospitality into Dell5 Hospitality, Inc. ("Dell5"). (7056-1 Statement ¶ 51;

McGarry Aff. ¶ 14, Ex. L; Ex. E at 109:21-24; 112:10-21; Ans. ¶ 29.) The merger of Dells

Hospitality into Dell5 effectuated a transfer of all of Dells Hospitality's assets and liabilities,

including the Hotel and the associated debt, to the Plaintiff. (7056-1 Statement ¶ 52; McGarry

Aff. ¶ 7, Ex. E at 111-112:15-3.)  Prior to the merger, Dell5 had no assets of its own.  (7056-1

Statement ¶ 53; McGarry Aff. ¶ 7, Ex. E at 109:21-24.)

### The Debtor Causes Dell5 to File for Bankruptcy, and Judge Cox Vacates the Stay

To further thwart the scheduled sheriff's sale, the Debtor caused Dell5 to file a

bankruptcy petition (Case No. 10 B 35648) in the Northern District of Illinois (the "Dell5

Bankruptcy Case") on August 10, 2010, immediately following the aforementioned merger.

(7056-1 Statement ¶¶ 54 & 55; McGarry Aff. ¶ 14, Ex. L.)

On August 24, 2010, Bankruptcy Judge Jacqueline P. Cox held a hearing on the lender's

motion to lift the automatic stay.  (7056-1 Statement ¶ 56; McGarry Aff. ¶ 7, Ex. E.)  During the

course of that hearing, the Debtor made the following admissions and statements under oath:

- The Debtor instructed Pyramid to transfer from Dells Hospitality's M&I Account to the Chase Account money earmarked for debt service, and transferred that money again from the Chase Account to Grafin.  (7056-1 Statement ¶ 57; McGarry Aff. ¶ 7, Ex. E at 116:18-23; 121:6-15; 130:12-25; 132:11-17.)

- Dells Hospitality stopped making payments on the loan in January 2009 because it had "obligations to other creditors" and "was used to pay off obligation[s] that Dells Hospitality … [had] for Grafin." (*Id.*; Ex. E at 135-36:20-7; 137-38:25-11.)

- Starting in January 2009 and continuing until the appointment of the Receiver in August 2009, Dells Hospitality failed to make monthly payments on the loan. (*Id.*; Ex. E at 136:3-7.)

- The Debtor could have used the money to pay the loan but instead transferred it to the Chase Account and then to Grafin.  (*Id.*; Ex. E at 154-55:18-2.)

- The merger of Dells Hospitality into Dell5 effectuated a transfer of all of Dells Hospitality's assets and liabilities, including the Hotel and the associated debt to the Plaintiff. (*Id.*; Ex. E at 111-112:15-3.)

- Dell5 had no assets of its own at the time of the merger. (*Id.*; Ex. E at 109:21-24.)

- The Debtor drafted the articles of merger that were filed with the Wisconsin Department of Financial Institutions. (*Id.*; Ex. E at 112:10-24.)

- The merger and bankruptcy filing frustrated the sheriff's sale. (*Id.*; Ex. E at 113:14-21.)

At the end of the hearing, Judge Cox granted relief from the automatic stay and dismissed the Dell5 Bankruptcy Case, allowing the Foreclosure Action to proceed. (7056-1 Statement ¶ 58; McGarry Aff. ¶ 7, Ex. E at 207-213.) Significantly, for the purposes of the present Motion, Judge Cox made the following findings at the conclusion of the hearing:

> There is nothing but dishonesty throughout this record, dishonesty with respect to going into court in Wisconsin representing [Dells Hospitality] when [Dells Hospitality] no longer existed. The merger was done so close to the date of the sale; bankruptcy was filed on the date of the sale. Those efforts indicate an intent to hinder and delay.
>
> The fraud is in trying to help [the Debtor] avoid the guaranty. . . .
>
> [The Debtor] took money from an account he says was [Dell5's] but was the original entity's when he knew a receiver was in place. He may have admitted to a felony under oath here today. I'm not sure.
>
> . . .
>
> I just don't believe it. This was all about fraud. This was all about delaying and avoiding legitimate responsibility, civil responsibility for [the Debtor]. He tells us that that Chase [A]ccount was used for legitimate business purposes, but he doesn't bring us any accounting. He doesn't bring any checks or anything to show what happened to all that money. He said it was legitimate business expenses. An interesting conclusion. Where are the facts? I just don't believe it.

(7056-1 Statement ¶ 59; McGarry Aff. ¶ 7, Ex. E at 208-210:1-14.)

On August 26, 2010, Judge Cox issued her written Order on Motion for Relief from Automatic Stay. (7056-1 Statement ¶ 60; McGarry Aff. ¶ 15, Ex. M.) In that Order, Judge Cox confirmed her previous oral finding that the Debtor had engaged in a "scheme to delay, hinder and defraud" the Plaintiff based in part on the Debtor's

> action in withdrawing $136,000 from a bank account belonging to [Dells Hospitality] after the judge hearing the foreclosure case appointed a receiver to run [Dells Hospitality] and manage its assets. [The Debtor] admitted on the witness stand that he was aware of the receiver order but took the money anyway. The [R]eceiver testified that [the Debtor] received transfers of $647,000 to which he was not entitled. [The Debtor] suggested that he took the $136,000 in satisfaction of [Dells Hospitality's] debt to him. However, he did not say what that debt was or what happened to the other $511,000. The [R]eceiver should have been told about that debt and asked to satisfy it.

(7056-1 Statement ¶ 60; McGarry Aff. ¶ 15, Ex. M at pp. 2-3.)

### The State Foreclosure Court Proceeds with the Sale of the Hotel

After Judge Cox vacated the automatic stay and dismissed the Dell5 Bankruptcy Case, a sheriff's sale was held in the Foreclosure Action on September 14, 2010, and the Property was sold for $9,090,000. (7056-1 Statement ¶ 61; McGarry Aff. ¶ 16, Ex. N.) That sale was confirmed on October 1, 2010. (7056-1 Statement ¶ 62; McGarry Aff. ¶ 16, Ex. N.) The Debtor's appeal of Judge Cox's Order in the Dell5 Bankruptcy Case ultimately was denied. (7056-1 Statement ¶ 62.)

### The Debtor Removes the Personal Claims Against Him to the Wisconsin District Court

On November 29, 2012, the Debtor removed the theft and conversion claims brought against him by the Plaintiff in the Wisconsin state court Foreclosure Action to the United States District Court for the Western District of Wisconsin (the "Wisconsin District Court") under that Court's diversity jurisdiction. (7056-1 Statement ¶ 63; McGarry Aff. ¶ 17, Ex. O.) On March

20, 2013, the Wisconsin District Court issued an Opinion and Order that found the Debtor had

converted and stolen "at least $677,000.00" from the Plaintiff. (7056-1 Statement ¶ 64; McGarry

Aff. ¶ 4, Ex. B at p. 13.)

In so ruling, the Wisconsin District Court first addressed the Debtor's challenge to its

jurisdiction:

> Even though [the Debtor] has the burden as the removing party to
> establish diversity jurisdiction, he never responded to the court's
> show cause order.    However, [the Plaintiff] submitted the
> information necessary to make this showing, arguing that the
> principles of judicial economy and efficiency favor this court
> exercising its jurisdiction over this lawsuit. (7056-1 Statement ¶
> 65; McGarry Aff. ¶ 4, Ex. B at pp. 1-2.)
>
> As to the latter proposition, the court whole-heartedly agrees. The
> [Debtor] having gone through two law firms, having nearly
> defaulted and, at one point, having been unreachable, this dispute
> has been pending before this court for well over two years and is in
> its final stages. [The Plaintiff] has spent considerable time and
> resources attempting to secure a judgment against [the Debtor].
> Given [the Debtor's] propensity for delay, the court agrees that
> [the Plaintiff] would suffer substantial harm through no fault of its
> own if the court were to remand the case back to state court
> because the [Debtor] improvidently removed it. (*Id.*; Ex. B at p.
> 2.)
>
> . . .
>
> U.S. National Bank Association has its main office in Cincinnati,
> Ohio. Because [the Debtor] is a resident of the State of Illinois,
> there is, therefore, complete diversity between the parties. Having
> previously found $75,000 in controversy (dkt. #53), this court has
> jurisdiction over this case. (*Id.*; Ex. B at p. 3.)

The Wisconsin District Court then specifically rejected the Debtor's arguments that he

had not personally executed the various Loan Documents:

> [The Debtor] was the president of Dells Hospitality until August 6,
> 2010, and acknowledges signing on behalf of that company *the*
> *signature pages* for each of the Loan Documents in his office on
> November 27, 2007. (7056-1 Statement ¶ 66; McGarry Aff. ¶ 4,
> Ex. B at p. 7.)

. . .

> As a matter of contract law, [the Debtor's] assertion − that his
> failure to take the opportunity to review any of the loan signature
> pages somehow excuses any personal liability he may have as a
> guarantor of a 12.6 million dollar commercial loan − is meritless.
> (*Id.*; Ex. B at p. 10.)

. . .

> While claiming to have been defrauded by a switch of documents,
> [the Debtor] has *no* proof. Just the opposite: he admits to have *no*
> idea what the Loan Documents actually said one way or the other.
> (*Id.*; Ex. B at p. 11.)

. . .

> Here, [the Debtor] should have been able to offer any number of
> witnesses and documents to prove that the closing [L]oan
> [D]ocuments now relied upon by [the Plaintiff] are fraudulent,
> including testimony from his own lawyers to the transaction. If
> anything, the fraud here would have to have been massive,
> involving now disinterested sellers, the original lenders at [Bear],
> likely the closing agent and/or title insurance representative, *and*
> all of the other lawyers to various parties in the transaction, not to
> mention copies of the final closing documents that most, if not all,
> of the parties would almost certainly have retained. The fact that
> [the Debtor] can offer no one and no document to corroborate his
> own pure speculation that the contracts were altered post-signing
> dooms any chance he has of proving fraud. (*Id.*; Ex. B at p. 11.)

Finally, the Wisconsin District Court specifically found and held that the Debtor had

stolen the Plaintiff's funds under applicable Wisconsin law:

> [The Debtor] wrongly misapplied, removed and disposed of over
> $677,000 in [H]otel revenue earmarked to pay debt obligations
> through the Chase [A]ccount and then diverted those funds to
> Grafin without [the Plaintiff's] consent. (7056-1 Statement ¶ 67;
> McGarry Aff. ¶ 4, Ex. B at p. 8.)

. . .

> Typically, question[s] of intentionality required for establishment
> of liability for theft under [Wis. Stat.] § 943.20 would require a
> trial, except that here, too, [the Debtor] fails to dispute the material
> facts, including his own testimony before Bankruptcy Judge
> Jacqueline P. Cox in opposition to [the Plaintiff's] motion
> requesting leave from automatic stay in which he admitted

> intentionally transferring monies earmarked to pay off Dells Hospitality's loan obligations. No reasonable trier of fact could, therefore, fail to find intentional acts of theft in violation of Wis. Stat. § 943.20(1) by a preponderance of the credible evidence in the amount of at least $677,000. This sum would also appear to be subsumed within [the Plaintiff's] losses from [the Debtor's] breach of his guaranty, although the finding of intentionality may be important for bankruptcy purposes. (*Id.*; Ex. B at pp. 13-14.)

All of the facts contained in the Wisconsin District Court's Opinion and Order were deemed undisputed and material for purposes of summary judgment. (7056-1 Statement ¶ 68; McGarry Aff. ¶ 4, Ex. B at p. 5 n.3.)

### The Debtor Files His Personal Bankruptcy Case

Approximately one month after the Wisconsin District Court issued its ruling, the Debtor filed his voluntary Chapter 7 petition on April 22, 2013. (7056-1 Statement ¶ 3.) On July 16, 2013, the Plaintiff filed this adversary proceeding seeking to determine the dischargeability of the $677,000 debt owed to it by the Debtor. (7056-1 Statement ¶ 4.) On October 1, 2013, the Debtor filed an answer to the complaint. (7056-1 Statement ¶ 6; Dkt. No. 25.) The Plaintiff filed this Motion for Summary Judgment on February 6, 2014. (Dkt. Nos. 33 & 34.) The Debtor filed his Response Brief and Affidavit on April 1, 2014. (Dkt. Nos. 56 & 57.) The Plaintiff filed its Reply on April 29, 2014. (Dkt. No. 60.) The Court took the matter under advisement thereafter.

### IV. DISCUSSION

The Plaintiff seeks summary judgment on its two-count complaint. Under Count I, the Plaintiff seeks to have the $677,000 debt found non-dischargeable under § 523(a)(4) because it was incurred through the Debtor's larceny or embezzlement. Under Count II of the complaint, the Plaintiff seeks to have the debt found non-dischargeable under § 523(a)(6) because the Debtor willfully and maliciously caused the Plaintiff injury. The Plaintiff argues that the Wisconsin District Court judgment should be given preclusive effect and that the findings

contained in that judgment, along with the findings made by Judge Cox in the Dells5 Bankruptcy Case (which were incorporated by reference into the Wisconsin District Court judgment), establish all of the elements necessary to find the debt non-dischargeable under § 523(a)(4) and (a)(6). The Court agrees.

## A. Exceptions to the Discharge of a Debt

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992). The burden of proof required to establish an exception to the discharge of a debt is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996). Exceptions to the discharge of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000).

## B. Applicability of Collateral Estoppel or Issue Preclusion

The Plaintiff contends that, because of the preclusive effect of the Wisconsin District Court's judgment, the elements of its § 523(a)(4) and (a)(6) claims have already been litigated and proven. The doctrine of collateral estoppel or issue preclusion precludes the relitigation of issues already determined in a prior action. *Hayes v. City of Chi.*, 670 F.3d 810, 814 (7th Cir. 2012). "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The Supreme Court has held that collateral estoppel principles apply in discharge exception proceedings under § 523(a). *Grogan*, 498 U.S. at 284 n.11.

Thus, "where a court of competent jurisdiction has previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim, the debtor may not seek to relitigate those underlying facts in bankruptcy court, provided that the issues involved had been 'actually litigated.'" *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 663 (Bankr. N.D. Ill. 1998), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D. Ill. Feb. 22, 2000), *aff'd*, No. 00-1720, 2001 WL 1313652 (7th Cir. Oct. 23, 2001). "Although state court judgments on questions of fraud, willfulness, malice, and other issues may not bind a bankruptcy court in a dischargeability action, under certain conditions debtors will be collaterally estopped from re-litigating factual determinations made in connection with such judgments in the bankruptcy court." *Gerard v. Gerard (In re Gerard)*, 482 B.R. 265, 269 (Bankr. E.D. Wis. 2012), *aff'd*, No. 13-C-0114, 2014 WL 461182 (E.D. Wis. Feb. 5, 2014).

The preclusive effect of a federal judgment is determined by federal common law. *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Under that law, a federal diversity judgment is to be accorded the same preclusive effect that would be applied by the state court in the state in which the federal court sits. *Haliburton Energy Servs., Inc. v. McVay (In re McVay)*, 461 B.R. 735, 741 (Bankr. C.D. Ill. 2012). Because the District Court was situated in Wisconsin and was exercising its diversity jurisdiction over state law claims, Wisconsin law on issue preclusion applies here.

According to Wisconsin law, "collateral estoppel, or issue preclusion, is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772-73 (7th Cir. 2013). In order for issue preclusion to apply, a two-step inquiry must be made: (1) whether the issue was actually litigated in the previous action and was necessary to the judgment; and (2)

21

whether the application of issue preclusion would be fundamentally fair. *Id.* at 773. The party asserting the doctrine has the burden of proving that all of the threshold requirements have been met. *Larsen v. Jendusa-Nicolai*, 442 B.R. 905, 912 (E.D. Wis. 2010), *aff'd*, 677 F.3d 320 (7th Cir. 2012).

With respect to the first step, summary judgment is conclusive and final, and therefore the underlying matter is deemed actually litigated for purposes of issue preclusion. *In re Estate of Rille ex rel. Rille*, 300 Wis.2d 1, 24, 728 N.W.2d 693, 704 (Wis. 2007).

As to the second step--determining whether the application of issue preclusion would be fundamentally fair--the following five factors are relevant: (1) the availability of review of the first judgment; (2) whether there are two distinct claims or intervening contextual shifts in the law;[8] (3) differences in the quality or extensiveness of proceedings between the two courts; (4) shifts in the burden of persuasion such that the party seeking preclusion had a lower burden in the first matter than in the second one; and (5) whether matters of public policy are involved and the adequacy of the loser's opportunity or incentive to obtain a full and fair adjudication of the issue. *DeGuelle*, 724 F.3d at 937 (citing Wisconsin law); *Universal Restoration Servs., Inc. v. Hartung (In re Hartung)*, 511 B.R. 538, 544-45 (E.D. Wis. 2014) (same). The goal of the fundamental fairness requirement is to "protect the rights of all parties to a full and fair adjudication of all issues involved in the action[.]" *Aldrich v. Labor & Indus. Review Comm'n*, 341 Wis.2d 36, 76, 814 N.W.2d 433, 453 (Wis. 2012) (internal quotation omitted). Courts should give special attention to "guarantees of due process which require that a person must have had a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded." *Id.* (internal quotation omitted).

---

[8] The Court will not address this factor in the discussion that follows because the Seventh Circuit has refused to apply it, deeming it not understandable. *DeGuelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013).

## C. Issue Preclusion Applies to the Plaintiff's Claim Under § 523(a)(4)

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Of these three grounds for non-dischargeability, the complaint here alleges only embezzlement and larceny.

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989). To prove embezzlement under § 523(a)(4), the Plaintiff must show that (1) the Debtor appropriated the subject funds his own benefit; and that (2) the Debtor did so with fraudulent intent or deceit. *See id.* "A fiduciary relationship or trust relationship need not be established in order to find a debt non-dischargeable by an act of embezzlement." *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 775 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012).

The fraud associated with embezzlement is a positive fraud involving moral turpitude or intentional wrong. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013). The wrongdoing must be "subjective, deliberate wrongdoing." *Follett Higher Educ. Grp., Inc., v. Berman (In re Berman)*, 629 F.3d 761, 765 n.3 (7th Cir. 2011); *Catrambone v. Adams*, 498 B.R. 839, 850 (N.D. Ill. 2013). Implied or constructive fraud is not enough. *Bullock*, 133 S.Ct. at 1759.

Larceny is proven for purposes of § 523(a)(4) if a debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent. *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991). Larceny requires "a showing of felonious intent at the time of the taking." *Iwaszczenko v. Neale (In re*

*Neale)*, 440 B.R. 510, 520 (Bankr. W.D. Wis. 2010). "Intent may properly be inferred from the totality of the circumstances and the conduct of the person accused." *Rose*, 934 F.2d at 904.

### 1. The Issues in this Litigation Were Actually Litigated Before Another Court

In the Wisconsin District Court action, the Plaintiff alleged that the Debtor "converted, diverted and intentionally took funds without the legally-required consent of [the Plaintiff] and court-appointed [R]eceiver." (McGarry Aff. ¶ 4, Ex. B at p. 1.) In its Opinion, the Wisconsin District Court, under the heading "Conversion, Misapplication and Embezzlement" found that the Debtor essentially conced[ed] facts establishing illegal conversion . . . ." (McGarry Aff. ¶ 4, Ex. B at p. 13.) Further, the Wisconsin District Court stated, regarding the question of intentionality required to establish theft under Wis. Stat. § 943.20, that: (1) the Debtor failed to dispute the material facts in the Plaintiff's motion for summary judgment; and (2) the Debtor admitted before Judge Cox in the hearing for stay relief that he intentionally transferred monies earmarked to pay Dells Hospitality's loan obligations to the Plaintiff. (*Id.*)

Section 943.20 addresses theft and provides that: "Whoever does any of the following may be penalized. . . [if he] [i]ntentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." Wis. Stat. § 943.20(1)(a) (2013). The Wisconsin District Court found that the Plaintiff proved by a preponderance of the evidence that there were intentional acts of theft by the Debtor in violation of this statute. (7056-1 Statement ¶ 67; McGarry Aff. ¶ 4, Ex. B at p. 13.)

The Wisconsin District Court found that "[w]hile Dells Hospitality was in default and without [the Plaintiff's] consent, [the Debtor] caused Dells Hospitality to misapply, convert and/or embezzle money by diverting revenues from the [H]otel's operating account to an off-site

account controlled by him." (McGarry Aff. ¶ 4, Ex. B at p. 8.) Further, that Court found that the Debtor "wrongly misapplied, removed and disposed of over $677,000 in [H]otel revenue earmarked to pay debt obligations through the Chase [A]ccount and then diverted those funds to Grafin without [the Plaintiff's] consent." (*Id.*) The Wisconsin District Court found that the Plaintiff was entitled to summary judgment on its conversion and theft claims. (*Id.* at p. 13.) That Court noted that the issue of intent under the Wisconsin theft statute would have required a trial if the Debtor had not failed to dispute the material facts. However, in his own testimony in opposition to the stay relief motion before Judge Cox, the Debtor admitted that he intentionally transferred monies earmarked to pay the Dells Hospitality loan obligation. (*Id.*) Based in part on the proceedings that had taken place before Judge Cox, the Wisconsin District Court found that "[n]o reasonable trier of fact could, therefore, fail to find intentional acts of theft in violation of Wis. Stat. § 943.20(1) by a preponderance of the credible evidence in the amount of at least $677,000." (*Id.*)

But the Wisconsin District Court did not make a specific finding of fraudulent intent by the Debtor, because fraudulent intent is not an element under the Wisconsin statute. Accordingly, fraudulent intent was not an issue actually litigated before the Wisconsin District Court.

The Plaintiff argues, however, that the Debtor's admissions before Judge Cox at the hearing on the motion for relief from the stay show that he intentionally and fraudulently converted money that belonged to the Plaintiff. According to the Plaintiff, the Wisconsin District Court's findings and the findings made by Judge Cox, when read together, establish the requisite elements for embezzlement and larceny under § 523(a)(4), including intent. Specifically, the Plaintiff points to the Debtor's admission that he instructed Pyramid to transfer

25

money pledged to pay the Plaintiff's loan obligations first to an account he controlled, the Chase Account, and then to Grafin, a company he also controlled. (7056-1 Statement ¶57; McGarry Aff. ¶ 7, Ex. E at 116:18-23; 121:6-15; 130:12-25; 132:11-17.) The Debtor also admitted that instead of making loan payments to the Plaintiff, he used the money to pay other creditors. (*Id.* at 135-36:20-7; 137-38:25-11.)

In the Dell5 Bankruptcy Case, Judge Cox held an evidentiary hearing on a motion for relief from the stay under 11 U.S.C. § 362(d)(4).[9] (*Id.* at 3-4:25-4; 5:5-7.) After hearing all of the evidence, Judge Cox lifted the stay and dismissed that case. (*Id.* at 207:22-23; 210:15-22; 211:10-17.) She made several statements regarding the Debtor's actions. First, she stated that the merging of Dells Hospitality into Dell5 was an indication of the Debtor's "intent to hinder and delay." (*Id.* at 208:15-18.) She further observed that "[t]he fraud is in trying to help [the Debtor] avoid the guaranty." (*Id.* at 208:19-20.) According to Judge Cox, the Debtor "took money from an account he says was [Dell5's], but was [Dells Hospitality's] when he knew a receiver was in place. He may have admitted to a felony under oath here today. I'm not sure." (*Id.* at 208-09:24-3.) Finally, Judge Cox noted that "[t]his record is replete with dishonesty and with fraud." (*Id.* at 209:16-17.)

---

[9]   Under § 362(d)(4), relief from the automatic stay shall be granted

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4). Thus, § 362(d)(4) requires two elements be established: (1) the debtor engaged in a scheme to delay, hinder, or defraud creditors; and (2) that involved either the transfer of property without the creditor's consent or court approval, or multiple filings. *In re Briggs*, No. 12 B 14853, 2012 WL 3780542, at *4 (Bankr. N.D. Ill. Aug. 31, 2012). A scheme to defraud has been defined as "'an intentional artful plot or plan to delay, hinder [and] defraud creditors.'" *Id.* at *5 (quoting *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006)).

The Court finds that the Debtor's fraudulent intent in misappropriating the Plaintiff's property was actually determined by Judge Cox and incorporated into the findings of the Wisconsin District Court. The Debtor's conduct was found to be an intentional plan to hinder and delay creditors. Therefore, the Court finds that the fraudulent intent element of both the larceny and embezzlement claims under § 523(a)(4) was actually litigated for purposes of collateral estoppel.

### 2.   The Plaintiff Has Met the Fundamental Fairness Requirement

The Court next inquires whether giving preclusive effect to the judgment of the Wisconsin District Court would be fundamentally unfair to the Debtor. The Court will examine the five factors in order to make that determination.[10]

First, the Debtor had the opportunity to appeal the Wisconsin District Court's judgment but did not avail himself of it. Instead of filing an appeal from that March 20, 2013 decision, he filed a Chapter 7 bankruptcy case in this Court on April 22, 2013. The Seventh Circuit has addressed an analogous situation: "though [the debtor] had the opportunity to appeal the . . . state court judgments, he did not avail himself of that opportunity. Instead, he filed for bankruptcy, but that is not a substitute for timely appeals of the state court judgments. The doctrine of issue preclusion . . . bars him from using the bankruptcy system to have his defenses reheard despite the state courts' rejection of those defenses." *Adams v. Adams*, 738 F.3d 861, 867 (7th Cir. 2013). Therefore, the Court finds that the Debtor had the opportunity to appeal the Wisconsin District Court's decision, but did not avail himself of that opportunity.

Next, the matters before both the Wisconsin District Court and this Court involve motions for summary judgment. The Wisconsin District Court issued a detailed, lengthy written decision that outlined its reasons and rationale for granting the Plaintiff's motion for summary

---

[10] The Court will not address the second factor. *See* n. 8 *supra*.

judgment and for its findings and conclusions that the Debtor's conduct constituted conversion and theft. The matter here is also on a motion for summary judgment and this Court is issuing a detailed decision explaining its reasons for granting the Plaintiff's Motion for Summary Judgment. Thus, there is no difference in the quality or extensiveness of the two proceedings.

Further, both here and in the Wisconsin District Court, the Plaintiff bore the same burden of proof: proof by a preponderance of the evidence. Thus, there was no difference in the burden of proof applied in each proceeding.

Finally, there are no matters of public policy involved here. The Debtor had a full and fair opportunity to adjudicate the theft issue before the Wisconsin District Court and in the adversary proceeding now pending before this Court. The Debtor removed the Foreclosure Action to the Wisconsin District Court and had the opportunity to respond to the summary judgment motion filed by the Plaintiff in that action. The Debtor had a full and fair opportunity to litigate the claim. Indeed, he established his incentive to do so by the number of times he raised the same issues before multiple courts.

Thus, based on these factors, the Court finds that the Plaintiff has met the fundamental fairness requirement for the application of issue preclusion.

The Court finds that the Plaintiff has demonstrated that issue preclusion applies here. All of the elements to establish a claim for larceny and embezzlement under § 523(a)(4) were decided by the Wisconsin District Court, which also referenced Judge Cox's decision in the Dell5 Bankruptcy Case stay relief motion. Accordingly, the Court finds that there remain no material issues of disputed fact and that the Plaintiff is entitled to judgment as a matter of law. Therefore, the debt owed by the Debtor to the Plaintiff in the amount of $677,000 is non-dischargeable under § 523(a)(4).

## D. Issue Preclusion Applies to the Plaintiff's Claim under § 523(a)(6)

Next, the Court addresses whether the Wisconsin District Court made findings sufficient to establish the elements of a claim brought under § 523(a)(6). The Plaintiff alleges willful and malicious conversion of its monies when the Debtor transferred funds from the Hotel's operating account to Grafin.

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For a finding of non-dischargeability of a debt under § 523(a)(6), the Plaintiff must prove three elements by a preponderance of the evidence: (1) the Debtor caused an injury to it or its property interest; (2) the Debtor's actions were willful; and (3) the Debtor's actions were malicious. *See Horsfall*, 738 F.3d at 774; *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 480 (Bankr. N.D. Ill. 2011).

The Seventh Circuit has held that a willful and malicious injury "is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai*, 677 F.3d at 324. The term "injury" is "understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *Horsfall*, 738 F.3d at 774 (quoting *In re Lymberopoulos*, 453 B.R. 340, 343 (Bankr. N.D. Ill. 2011)). "The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "'Willfulness' can be found either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Horsfall*, 738 F.3d at 774.

As to the malice element, conduct is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Id.* (citing *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)); *see also Jendusa-Nicolai*, 677 F.3d at 323.   The test for malice under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause or excuse. *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001).   To state a claim under § 523(a)(6), a creditor must allege conduct that amounts to an independent tort. *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011).

Here, the Plaintiff alleges that the Debtor's actions constitute conversion.   A willful and malicious conversion of property will support a claim under § 523(a)(6). *Estate of Crawford v. Ludwig (In re Ludwig)*, 508 B.R. 48, 57 (Bankr. N.D. Ill. 2014).   Under Wisconsin law, a claim for conversion is established when the Plaintiff proves that the Debtor: (1) controlled or took property belonging to the Plaintiff; (2) without the Plaintiff's consent; and (3) in a manner that seriously interfered with the Plaintiff's rights to possess the property. *See Horsfall*, 738 F.3d at 773; *In re Dealer Servs. Corp. v. Erb (In re Erb)*, 453 B.R. 914, 920-21 (Bankr. W.D. Wis. 2011) (citing *Knox Enters., Inc. v. Jetzer*, 326 Wis.2d 266, 787 N.W.2d 60 (Wis. Ct. App. 2010)).

### 1. The Issues in this Proceeding Were Previously Litigated and Determined by Another Court

The Wisconsin District Court found that (a) the Debtor intentionally, and without the Plaintiff's consent, transferred monies earmarked to pay Dells Hospitality's loan obligations to the Plaintiff and (b) those transfers seriously interfered with the Plaintiff's right to the funds:

> [w]hile Dells Hospitality was in default and without [the
> Plaintiff's] consent, [the Debtor] caused Dells Hospitality to
> misapply, convert and/or embezzle money by diverting revenues
> from the [H]otel's operating account to an off-site account
> controlled by him. He later transferred these funds into another
> company owned and controlled by [the Debtor]—Grafin. . . . In
> total, [the Debtor] wrongly misapplied, removed and disposed of
> over $677,000 in [H]otel revenue earmarked to pay debt
> obligations through the Chase [A]ccount and then diverted those
> funds to Grafin without [the Plaintiff's] consent.

(7056-1 Statement ¶ 67; McGarry Aff. ¶ 4, Ex. B at p. 8.)

The Wisconsin District Court further stated that "[n]o reasonable trier of fact could,

therefore, fail to find intentional acts of theft [under Wisconsin state law] by a preponderance of

the evidence. . . ." (*Id.* at p. 13.) The fact that the Wisconsin District Court found the Debtor to

have committed intentional acts of theft of the Plaintiff's property establishes that the issue of

whether the Debtor caused a willful injury to the Plaintiff was actually litigated.

Based on the undisputed facts, the Court finds that the Debtor injured the Plaintiff by

causing the transfer of funds from the Hotel's operating account to Grafin. The transfer of these

funds deprived the Hotel of the use of these monies while Dells Hospitality was in default on its

loan obligation to the Plaintiff and during the tenure of the Receiver appointed to oversee the

Hotel's operations. The Debtor acted willfully when he misled Pyramid regarding his intended

use of the funds. He instructed Pyramid to wire the funds purportedly to enable him to make a

loan payment to the Plaintiff's mortgage servicer, but failed to make any such payment. The

Debtor also acted willfully when he took affirmative steps to cause the transfer of funds from the

Chase Account to Grafin through August 2009, knowing that these transfers would deny the

Plaintiff the funds and deny the Hotel the ability to make payment to the Plaintiff.

Further, based upon the undisputed facts, the Court finds that the Debtor inflicted an

injury upon the Plaintiff knowing he had no legal justification and either desiring to inflict the

injury or knowing it was highly likely to result from his act. The Wisconsin District Court found

that the Debtor admitted intentionally transferring monies earmarked to pay the Plaintiff's loan

obligations. The Debtor never accounted for the funds he took, nor did he produce any evidence

that the funds were used for other Hotel expenses. Thus, the Court finds that the Debtor acted

maliciously in that he acted in conscious disregard of his duties or without just cause or excuse.

### 2.   The Plaintiff Has Met the Fundamental Fairness Requirement

For the reasons previously stated with respect to the claim under § 523(a)(4), the Court

finds that the Plaintiff has met the fundamental fairness test for the application of issue

preclusion.

In sum, the Court finds that the Plaintiff has demonstrated that issue preclusion applies to

its claim under § 523(a)(6). All of the required elements to establish a claim for conversion were

decided by the Wisconsin District Court. The undisputed facts before this Court establish the

requisite elements under § 523(a)(6). Accordingly, the Court finds that there are no material

issues of disputed fact and that the Plaintiff is entitled to judgment as a matter of law. The debt

owed by the Debtor to the Plaintiff in the amount of $677,000 is therefore non-dischargeable

under § 523(a)(6).

### E. Remaining Issues Raised by the Debtor in His Response Brief and Affidavit

Lastly, the Court will address the remaining issues raised in the Debtor's Affidavit and

Response Brief filed in response to the Plaintiff's Motion for Summary Judgment. These

included his arguments that: (1) he did not execute the Note, Mortgage, and Indemnity

Agreement; (2) the Note, Mortgage, and Indemnity Agreement were altered after he signed

them; (3) the Wisconsin District Court lacked subject matter jurisdiction; (4) his actions did not

cause willful and malicious injury to the Plaintiff, and (5) the Plaintiff has not established

embezzlement.[11]   None of these arguments have merit or preclude the entry of summary

judgment.

### 1.  The Debtor Executed the Note, Mortgage, and Indemnity Agreement

The Debtor is estopped from denying that he signed the Note on behalf of Dells

Hospitality.  He has already admitted that he signed it in his answer in the Foreclosure Action,

and two separate courts have already decided that he signed the Note on behalf of Dells

Hospitality.  (7056-1 Statement ¶ 49; McGarry Aff. ¶ 12, Ex. J.)  The Debtor previously tried to

create a fact issue in the Wisconsin Foreclosure Action, thereby precluding summary judgment,

by submitting an affidavit in which he claimed that he did not sign the Note.  In granting the

Plaintiff's motion for summary judgment, the Wisconsin state court rejected that argument,

finding that

> [ev]en if the Court were to consider the [Debtor's] Affidavit, the
> Court also concludes that Dells [Hospitality] is bound by the facts
> already admitted in its Answer. . . .  In its Answer, Dells
> [Hospitality] unconditionally admitted that it had made, signed and
> delivered the Note.  Under Wisconsin Case Law, Dells
> [Hospitality] cannot contradict its prior admissions through the
> submission of the [Debtor's] Affidavit.

(*Id.* at p. 7 ¶¶ 8 & 9.)

In a separate proceeding three years later, the Debtor once again admitted to signing the

Loan Documents.  The Wisconsin District Court specifically made the following findings:

- [The Debtor] was the president of Dells Hospitality until August 6,
2010, and acknowledges signing on behalf of that company *the*

---

[11] The Debtor makes other statements in his Response Brief and Affidavit.  He contends that the entity, U.S. Bank
National Association not individually but as trustee for Maiden Lane, that filed the Wisconsin Foreclosure Action
does not exist.  This argument has no bearing on whether the debt at issue here should be found non-dischargeable.
The Plaintiff has established that it is the current assignee of the Loan Documents.  Thus, the Court will not further
address this argument.

   Additionally the Debtor states in his Affidavit that the engagement of the Plaintiff's attorneys was not
proper.  The Debtor does not explain this statement.   Nor has he stated a basis to disqualify the Plaintiff's counsel
under the Illinois Rules of Professional Conduct.  Nevertheless, this argument has no bearing on any material issues
of fact in this motion for summary judgment.  The Plaintiff is entitled to counsel of its choice.

> *signature pages* for each of the Loan Documents in his office on
> November 27, 2007. (7056-1 Statement ¶ 66; McGarry Aff. ¶ 4,
> Ex. B at p. 7.)

- As a matter of contract law, [the Debtor's] assertion – that his
  failure to take the opportunity to review any of the loan signature
  pages somehow excuses any personal liability he may have as a
  guarantor of a 12.6 million dollar commercial loan – is meritless.
  (*Id.*; Ex. B at p. 10.)

- While claiming to have been defrauded by a switch of documents,
  [the Debtor] has *no* proof. Just the opposite: he admits to have *no*
  idea what the Loan Documents actually said one way or the other.
  (*Id.*; Ex. B at p. 11.)

- Here, [the Debtor] should have been able to offer any number of
  witnesses and documents to prove that the closing [L]oan
  [D]ocuments now relied upon by [the Plaintiff] are fraudulent,
  including testimony from his own lawyers to the transaction. If
  anything, the fraud here would have to have been massive,
  involving now disinterested sellers, the original lenders at [Bear],
  likely the closing agent and/or title insurance representative, *and*
  all of the other lawyers to various parties in the transaction, not to
  mention copies of the final closing documents that most, if not all,
  of the parties would almost certainly have retained. The fact that
  [the Debtor] can offer no one and no document to corroborate his
  own pure speculation that the contracts were altered post-signing
  dooms any chance he has of proving fraud. (*Id.*)

Having repeatedly admitted under oath to signing the Note, a fact conclusively established in two

prior actions, the Debtor is not allowed in this proceeding to re-raise it as a disputed fact.

In addition, the Debtor alleges that he did not sign the Indemnity Agreement. However,

in the Wisconsin District Court matter, the Debtor did not deny executing the Indemnity

Agreement. The Wisconsin District Court found that the Debtor entered into the Indemnity

Agreement and deemed that fact to be "undisputed and material for purposes of summary

judgment." (7056-1 Statement ¶ 68; McGarry Aff. ¶ 4, Ex. B at p. 5 n.3.) This Court will not

relitigate that issue in this adversary proceeding.

## 2. The Note, Mortgage, and Indemnity Agreement Were Not Altered After the Debtor Signed Those Documents

Next, the Debtor contends that the Note, Mortgage, and Indemnity Agreement were all altered after he signed those documents. The Court will not allow the Debtor to reprise that argument because it has already been made before and rejected by the Wisconsin District Court. There, the Debtor admitted that he did not read the Loan Documents at the time he signed them. (7056-1 Statement ¶ 66; McGarry Aff. ¶ 4, Ex. B at pp. 10-11.) Further, the Wisconsin District Court found that "[w]hile claiming to have been defrauded by a switch of documents, [the Debtor] has *no* proof. Just the opposite: he admits to have *no* idea what the Loan Documents actually said one way or the other." (*Id.* at p. 11.) That court further stated that the "fact that [the Debtor] can offer no one and no document to corroborate his own pure speculation that the contracts were altered post-signing dooms any chance he has of proving fraud." (*Id.*)

Additionally, this argument by the Debtor is completely discredited by an opinion letter written by Michael J. Fiandaca, who acted as counsel to Dells Hospitality and the Debtor with respect to the loan transaction between Bear and Dells Hospitality. (Dkt. No. 60, Ex. B.) On November 21, 2007, Mr. Fiandaca wrote that "[t]he Loan Documents have been validly executed and delivered by [Dells Hospitality] and [the Debtor] and constitute the legal, valid and binding obligations of [Dells Hospitality] and [the Debtor] enforceable in accordance with their respective terms. . . ."[12] (*Id.* at p. 3 ¶ 5.) This opinion letter and the signed pages of the Loan Documents triggered the advance of $12.6 million from Bear to Dells Hospitality. The Debtor's

---

[12] "Loan Documents" is a defined term in the opinion letter and includes the following documents: Promissory Note in the principal sum of $12,600,000.00 made by Borrower to Lender; Borrower's Certificate; Asbestos Operations and Maintenance Agreement; Conditional Assignment of Management Agreement; Assignment of Agreements, permits and contracts; Mortgage and Security Agreement in the principal sum of $12,600,000 given by Borrower to or for the benefit of Lender covering the fee estate of Borrower in the Property; Assignment of Leases and Rents given by Borrower to Lender; Indemnity Agreement; Replacement Reserve and Security Agreement between Borrower and Lender; UCC-1 Financing Statements made by Borrower, as debtor, in favor of Lender as secured party; Financial Certificate of Borrower; and Closing Instructions Letter between Lender's counsel, Borrower, and the title insurer for the Loan. (Dkt. No. 60, Ex. B at pp. 1-2.)

argument therefore fails to raise any material issue of fact that would preclude the entry of summary judgment.

### 3. The Debtor's Statement That the Wisconsin District Court Lacked Subject Matter Jurisdiction Will Not Preclude Entry of Summary Judgment

The Debtor contends in his Affidavit in support of his Response Brief to the Plaintiff's Motion for Summary Judgment that the Wisconsin District Court lacked subject matter jurisdiction when it entered summary judgment in favor of the Plaintiff on March 20, 2013. After the Debtor removed the Wisconsin Foreclosure Action to the Wisconsin District Court, that court issued an order requiring the Debtor to provide evidence to establish diversity of the parties. (7056-1 Statement ¶ 65; McGarry Aff. ¶ 4, Ex. B at p. 1.) The Debtor did not comply with that request. (*Id.*) Rather, the Plaintiff provided that information to the Wisconsin District Court. (*Id.*; Ex B at pp. 1-2.) In finding that the parties were completely diverse, the Wisconsin District Court stated that it "whole-heartedly agrees" that "principles of judicial economy and efficiency favor this court exercising its jurisdiction over this lawsuit." (*Id.* at p. 2.)

This Court will not allow the Debtor to revisit the question of the Wisconsin District Court's subject matter jurisdiction. The Debtor could have appealed that court's finding of diversity jurisdiction. Instead, the Debtor filed his bankruptcy petition before this Court. This Court cannot act as an appellate tribunal for a federal district court, nor will it allow the Debtor to raise the issue of the Wisconsin District Court's jurisdiction in an attempt to preclude summary judgment in this adversary proceeding. *See Adams*, 738 F.3d at 867.

### 4. The Debtor's Statements That His Actions Did Not Cause Willful and Malicious Injury to the Plaintiff and That the Plaintiff Has Not Established Embezzlement Do Not Raise An Issue of Material Fact That Precludes the Entry of Summary Judgment

The Debtor states in his Response Brief that the Plaintiff failed to establish that he

committed embezzlement or that his actions caused a willful and malicious injury to the Plaintiff. Further, in his Affidavit, the Debtor avers that: (1) any money transferred to the Grafin account was to pay outstanding debt regarding the services and work performed by Grafin for the Hotel; (2) he did not personally benefit from any funds transferred from the Chase Account to the Grafin account; and (3) he did not act without cause or excuse by transferring the money for the outstanding debt to Grafin. (Debtor Aff. ¶¶ 30, 31, & 34.)

The Debtor does not supply any further facts, details, or evidence to support these conclusions. The Debtor's bare assertions unsupported by any specific facts do not raise an issue of material fact. *See Hildebrandt v. IL Dept. of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). Bare allegations not supported by specific facts are insufficient to oppose a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, these mere denials by the Debtor will not preclude the entry of summary judgment. *See McGuane v. Everest Trading, LLC (In re McGuane)*, 305 B.R. 695, 701-02 (Bankr. N.D. Ill. 2004). Accordingly, these statements by the Debtor do not raise an issue of material fact and will not preclude the entry of summary judgment in favor of the Plaintiff.

## V. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's Motion for Summary Judgment and finds that the $677,000 debt owed by the Debtor to the Plaintiff is non-dischargeable under § 523(a)(4) and (a)(6).

**ENTERED:**

DATE: August 5, 2014

Donald R. Cassling
**Donald R. Cassling**
**United States Bankruptcy Judge**